#### IN THE

# SURROGATE'S COURT

#### OF THE

# COUNTY OF NEW-YORK.

BEFORE ALEXANDER W. BRADFORD, SURROGATE.

CLAYTON *vs.* WARDELL.

*In the matter of the Estate of* GEORGE G. MESSERVE, *deceased.*

*In the matter of the Estate of* GEORGE SUTTON, *deceased.*

IN a question of legitimacy, it was adjudged by the Surrogate, that C. A. was "not the lawful issue" of G. M., and "was not entitled to any interest whatever in the estate of the said G. M., deceased." On appeal, the Supreme Court decreed, "that the said C. A. is the lawful issue of the said G. M., deceased, and that the said decree of the said Surrogate, be, and the same is hereby, in all things reversed;" and "that the said Surrogate resume and proceed with the accounting in reference to the estate of the said G. M., deceased." This decree was affirmed by the Court of Appeals. On the resumption of the accounting before the Surrogate, an application by the executors of G. M., for leave to furnish additional proofs on the question of legitimacy, was denied.

By the course of procedure prevailing in courts proceeding according to the practice and rules of the civil law, the effect of an appeal is to transfer the entire case, not merely for *review*, but also, if deemed proper, for

1

*trial ;* and it is competent for the appellate court to hear further testimony on the old, or on new allegations.

The appellate court may not only affirm or reverse the judgment below, but may modify it, or make an entirely new decree in accordance with its own views of justice; and in such case its adjudication is conclusive, and the Surrogate has no authority to hear further proofs on the point so determined.

An executor duly served with the original citation and neglecting to appear, though not made party to the appeal, has no right, on the cause being remitted, to litigate the question contested by his co-executors before the Surrogate, and determined by the court above on appeal.

Executors having made partial distribution, after notice of a claim on the establishment of which the estate becomes insufficient to pay all the debts of the deceased, must nevertheless respond to the creditors to the full extent of all the assets.

If, on taking the inventory, the property directed by statute to be set apart for minor children, was not so apportioned, the error may be corrected on the accounting.

The advertisement for claims protects the executor, in case of distribution after the advertisement has expired.

> HARRIS WILSON, *for Petitioner.*
> CHARLES W. SANDFORD, *for Executors of Messerve.*
> CHARLES O'CONOR,
> J. J. LATTING, *for Executors of Sutton.*
> J. T. MILLS, GEO. P. NELSON, E. M. WILLETT,
> BELL & COE, RICHARD BUSTEED, *for Creditors.*

THE SURROGATE. George G. Messerve, deceased, bequeathed to his executors ten thousand dollars in trust, to invest, and pay the interest to his son George during life, and on his death "to pay and distribute the said ten thousand dollars to and among the lawful issue of his said son George."

George Sutton, Charles C. Dobbs, and Nicholas Dean, were named executors; they all qualified, but Sutton took the principal charge of the estate.

Catharine Ann Messerve, by her next friend, on the 17th of April, 1839, filed her petition before the Surrogate, wherein, after setting out the will of the testator, Messerve, and the decease of his son George, she claimed to be the only child and lawful issue of George, by his marriage with

Sarah Maria Youngs, and prayed for an account and payment of the legacy of ten thousand dollars. A citation was issued on this petition, and on its return the parties appeared, but after several adjournments no further proceedings appear to have been had. On the 24th Dec., 1841, the matter was revived, and an order was made requiring the executors to account on the 2d of February then next. This order was personally served on all the executors. There is nothing to shew that Mr. Dobbs, one of the executors, ever appeared in person, on the return of this order, or subsequently. I have carefully examined the original minutes of the proceedings; and although witnesses are described as "produced, sworn and examined on the part of the executors," and "the counsel for the executors" is spoken of, yet in the decree, which was drafted by Mr. Sandford, that gentleman is described as counsel for Sutton and Dean, "surviving executors." It thus seems that, from some cause or other, perhaps from the non-appearance of the executor Dobbs on the return of the citation, the idea arose that he was deceased. That Mr. Sandford only appeared for the other executors, Sutton and Dean, is evidenced by the decree which he himself drafted.

Sutton and Dean, by their counsel, appear to have denied the allegation of the petitioner's interest, contending that she was not the lawful issue of George Messerve, deceased. Upon this point testimony was taken at various intervals from February 11 to July 12; some six witnesses having been examined on the part of the petitioner, and fourteen on the part of the executors—all on the single subject of the alleged marriage and the legitimacy of the petitioner. On the 15th December, 1843, the Surrogate made a decree, wherein, after reciting the proceedings had, service of the citation upon Sutton and Dean, "surviving executors," their appearance by counsel, and denial that the petitioner was "the lawful issue of the said George Messerve, deceased," and the hearing of the proofs of the respective parties, it was "ordered, adjudged and

decreed, that the said Catherine Ann Messerve is not the lawful issue of the said George Messerve, deceased, and is not entitled to any interest whatsoever in the estate of the said George G. Messerve, deceased;" and it was further ordered that "the said petition be dismissed." The petitioner appealed from this order to the Chancellor, and under the new Constitution the appeal came under the cognizance of the Supreme Court. June 19, 1848, on the petition of Edward Clayton, who had intermarried with Catharine Ann Messerve, and the consent of Mr. Sandford, who appeared as counsel for Nicholas Dean, the executor of Messerve, and for Thomas Wardell and William E. Dodge, executors of the will of George Sutton, who had died pending the appeal, it was ordered by the Supreme Court that the appeal and the proceedings therein should stand revived, and be conducted in the name of Clayton and wife against Dean, executor of Messerve, and Wardell and Dodge, executors of Sutton. The appeal was thereafter heard; and, January 29, 1849, it was adjudged and decreed by the Supreme Court "that the said Catharine Ann is the lawful issue of the said George Messerve, deceased, and that the said decree of the said Surrogate be, and the same is hereby, in all things reversed," and "that the said Surrogate resume and proceed with the accounting in reference to the estate of the said George G. Messerve, deceased, by the surviving executor of said last will and testament of the said George G. Messerve, and by the said respondents, Thomas Wardell and William E. Dodge, executors of George Sutton, deceased, late one of the executors of the last will and testament of George G. Messerve, deceased." This decree was affirmed by the Court of Appeals. On the return of the case to the Surrogate's Court, it appearing that Dobbs, one of the executors of Messerve, was still living, he was brought in by citation, and the accounting was resumed, as directed by the decree of the Supreme Court. The executors of Sutton being desirous of having the accounting, so far as it affected the

estate of their testator, final, cited all the creditors, legatees, and next of kin of Sutton, to attend the final settlement of their accounts. In this way, both estates are now fully represented before me.

An application is now made by the surviving executors, Dean and Dobbs, to be permitted to furnish additional proof of the alleged previous marriage between the mother of Mrs. Clayton and Richard I. Schenck. Now, this was the very point urged before the Surrogate, to which all the testimony adduced by the executors of Messerve was directed, and upon which the question of the legitimacy of Mrs. Clayton depends. After a litigation of some ten years or more, had I the power to hear additional evidence upon an issue which has been determined by the highest appellate court, I do not think it would be in consonance with the salutary rules that govern applications of this kind, to allow the parties what would, in effect, be the benefit of a new trial. There is no allegation of surprise, or of newly discovered testimony ; and the evidence sought to be introduced is merely cumulative to the precise and only point at issue in this matter from the very beginning.

It is insisted, however, that the executor, Dobbs, has a *right* to raise this question of the legitimacy of Mrs. Clayton anew. I think not. It is not sought to make him *personally* liable ; he has no personal interest at stake, and is now cited in only for the purpose of proceeding formally in the accounting. If he did not appear on the return of the original citation, he is certainly precluded by his own laches ; if he did appear, and was represented in common with the other executors by Mr. Sandford, the mistake of supposing him dead was the fault of his own counsel, who drew the decree. He cannot, therefore, now, in either case, set up that he was not made a party to the appeal which was taken from that decree. Besides, it is well settled that each executor has an entire authority and interest in regard to the estate of the testator. The estate

of Messerve is consequently bound by the result of the contest carried on by the executors, Sutton and Dean ; and I cannot but think that it would be gross injustice to permit the identical question determined in that contest, by the Supreme Court and Court of Appeals, to be opened and litigated afresh by an executor who was so nearly a cypher in the administration of the estate, that for many years he was supposed to be dead.    Nor, unless the executors have a *right* to produce further evidence on the original issue made with the petitioner, have I any authority to hear it.   The issue has been tried and determined.   There is no longer room for the exercise of judicial discretion.   For by the course of procedure prevailing in courts proceeding according to the practice and rules of the civil law, the effect of the appeal is to transfer the entire case not merely for *review*, but also, if deemed proper, for *trial ;* and it is competent for the appellate court to hear further testimony on the old or on new allegations. *In causâ appellationis a sententiâ definitivâ, licet tam appellanti, quam parti appellatœ, non allegata (coram judice a quo) allegare, et non probata probare.   Oughton, Tit.* 318, *pl.* 1 ; *Case* vs. *Towle,* 8 *Paige,* 479 ; 3 *Hagg,* 265, *note a ; ibid,* 365.    So, likewise, the appellate court may not only affirm or reverse the judgment below, but may modify it or make an entirely new decree, in accordance with its own views of the justice of the case.   (*Burns, Ecc. L. Titles, Appeal and Practice, Vol.* 1, *p.* 57, *a ; Vol.* 3, *p.* 329.)    In the present instance, the court above, instead of merely reversing the Surrogate's decree, went further, and adjudicated the only question of law and of fact involved in the case, adjudging " that the said Catharine Ann is the lawful issue of the said George Messerve."    This judgment was affirmed by the Court of Appeals, and the point so determined is irrevocably settled so far as the present controversy is concerned.   (*Stafford* vs. *Bryan,* 2 *Paige,* 45 ; *Lyon* vs. *Dyckman,* 6 *Paige,* 473.) The case is remitted to me, with directions to proceed in

the accounting of the executors, on the basis of the legitimacy of Mrs. Clayton and the validity of her claim; and I have, therefore, nothing to do but to settle the accounts on that footing. I must, consequently, refuse to receive any evidence upon the subject of the validity of Mrs. Clayton's demand as the issue of George Messerve, on the ground that the decree of the Supreme Court is conclusive as to that question.

It appears, on the accounting, that the executors of Sutton have made distribution of some portion of his estate, among his children and legatees, and have also paid some of his debts in full. The estate now turns out to be insufficient for the payment of all the claims against it. Though the executors have acted in good faith, they are nevertheless liable to the creditors, to the full extent of all the assets of the deceased; and these payments to the legatees and kin of the testator must be disallowed. It seems, however, that at the time of taking the inventory, the property directed by statute to be set apart by the appraisers, for the benefit of minor children, was not so apportioned. This error may still be corrected, and the value of the property may be allowed the executors, on account of the moneys advanced by them for the support of the minors.

The charges in the accounts for debts paid in full must also be stricken out, and the executors allowed only for the amount to which such creditor whose debt has been paid in full would be entitled rateably with the other creditors, on the decree now to be entered for a final settlement of the accounts. The losses suffered by the executors by these overpayments, could easily have been avoided by reserving the funds necessary to meet all claims of which notice had been received. The advertisement for claims, under the statute, affords sufficient protection to the executor or administrator, if he pays or distributes after the period for the advertisement to run has expired. If he pays before, it is at his own risk, and he should suffer, in preference to an innocent creditor.